ENTERED RECEIVED
MAR 19 2019
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON DEPUTY
BY

AO 106 (Rev. 04/10) Application for a Search Warrant (Modified: WAWD 10-26-18)

# UNITED STATES DISTRICT COURT

for the

Western District of Washington

In the Matter of the Search of
*(Briefly describe the property to be searched or identify the person by name and address)*
Subject Residence and Subject Vehicle as more fully described in Attachment A

Case No. MJ19-108

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
Subject Residence and Subject Vehicle as more fully described in Attachment A, incorporated herein by reference.

located in the Western District of Washington, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 18 USC922(g)(5), 924(c); 21 USC 841(a)(1), 26 USC 5861 | Possession of Firearms by Alien; Possession of Firearms During Drug Trafficking Crime; Possession of Unregistered Firearms; Poss Controlled Substances with Intent to Distribute |

The application is based on these facts:

✓ See Affidavit of ATF Special Agent Elliott J. Prose, continued on the attached sheet.

☐ Delayed notice of ____ days (give exact ending date if more than 30 days: ____________ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

Pursuant to Fed. R. Crim. P. 4.1, this warrant is presented: ☐ by reliable electronic means; or: ☐ telephonically recorded.

[signature]
*Applicant's signature*

Elliott J. Prose, Special Agent
*Printed name and title*

◉ The foregoing affidavit was sworn to before me and signed in my presence, or
○ The above-named agent provided a sworn statement attesting to the truth of the foregoing affidavit by telephone.

Date: 03/19/2019

[signature]
*Judge's signature*

City and state: Seattle, Washington

Mary Alice Theiler, United States Magistrate Judge
*Printed name and title*

USAO: 2019R00241

**ATTACHMENT A**

**DESCRIPTION OF RESIDENCE AND VEHICLE TO BE SEARCHED**

**Subject Residence**: A multiple-story residence located at 22628 106th Avenue S.E., Kent, Washington, further described as blue in color that stands off a driveway. The residential building is clearly marked with dark numbering showing "22628."



**Subject Vehicle:** A 2005 Jeep Grand Cherokee, gray in color, bearing Washington State License Plate AGU4801 and Vehicle Identification Number (VIN) 1J8HR58215C594933.

**ATTACHMENT B**

**ITEMS TO BE SEARCHED FOR AND SEIZED**

The items to be seized are the following items or materials that may contain evidence of the commission of, the fruits of, or property which has been used as the means of committing federal criminal violations of Possession of Firearms by an Alien, in violation of 18 U.S.C. § 922(g)(5); Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); Possession and Transfer of Unregistered Firearms, in violation of 26 U.S.C. 5861(d) and 5861(e), and Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1):

1. Weapons: Firearms, ammunition, destructive devices, and related accessories, including but not limited to: silencers, scopes, shell casings, ammunition boxes, magazines, optics, gun lights, targets, holsters, gun cleaning equipment, slings to hold rifles, trigger locks or other mechanisms used to lock firearms, and machine gun parts.

2. Storage and Containers: Items used to store and distribute firearms and controlled substances, specifically methamphetamine, including safes, locked storage containers, hidden compartments, gun cases, gun lockers, gun safes, and gun storage containers.

3. Transaction Records: Documents such as ledgers, receipts, notes, and similar items relating to the acquisition, transportation, and distribution of firearms, destructive devices and ammunition;

4. Customer and Supplier Information: Items identifying firearms customers and suppliers, controlled substances customers and suppliers, such as, telephone records, personal address books, correspondence, diaries, calendars, notes with phone numbers and names, "pay/owe sheets" with amounts and prices, and similar items;

5. Photographs: Photographs, video tapes, digital cameras, and similar items depicting the property occupants, suspected buyers or sellers of controlled substances, firearms, controlled substances, drug distribution paraphernalia, and assets derived from the sale or purchase of firearms;

6. Property and Occupancy Records: Deeds, contracts, escrow documents, mortgage documents, rental documents, and other evidence relating to the purchase, ownership, rental, or control of the premises, and similar records of other property owned or rented by the occupants that is evidence of income from firearms and/or controlled substances trafficking and locations of firearms, controlled substances, and proceeds from firearms and drug trafficking.

7. Communication Devices: Cellular telephones and other communications devices including smartphones (i.e., iPhones, Android phones, Blackberries, and the like) may be seized, and searched for the following items:

a. Assigned number and identifying telephone serial number (ESN,MIN, IMSI, or IMEI);

b. Stored list of recent received, sent, and missed calls;

c. Stored contact information;

d. Stored photographs of narcotics, currency, firearms, or other weapons, evidence of suspected criminal activity, and/or the user of the phone or suspected co-conspirators, including any embedded GPS data associated with those photographs;

e. Stored photographs of real estate, or other records pertaining to the purchase, sale, lease, or renovation of real property including any embedded GPS data associated with those photographs;

f. Stored text messages, as well as any messages in any internet messaging apps, including but not limited to Facebook Messenger, iMessage, Wikr, Telegram, Signal, WhatsApp, and similar messaging applications.

8. Drug Paraphernalia: Items used, or to be used, to store, process, package, use, and/or controlled substances, such as plastic bags, cutting agents, scales, measuring equipment, tape, hockey or duffel bags, chemicals or items used to test the purity and/or quality of controlled substances, and similar items.

9. Trafficking Proceeds: Documents reflecting the source, receipt, transfer, control, ownership, and disposition of United States and/or foreign currency. Negotiable instruments, jewelry, precious metals, financial instruments, and other negotiable instruments.

**AFFIDAVIT OF ELLIOTT J. PROSE**

STATE OF WASHINGTON )
)
COUNTY OF KING )

I, Elliott J. Prose, being first duly sworn on oath, deposes and says:

## I. INTRODUCTION AND AGENT BACKGROUND

1. I am an "investigative or law enforcement officer of the United States" within the meaning of Title 18, United States Code, Section 2510(7), that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Title 18, United States Code, Section 2516.

2. I am a Special Agent (SA) with the United States Department of Justice (DOJ), Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF), and have been so employed since May 14, 2017. I am currently assigned to the Seattle Field Office, in Seattle, Washington where I am assigned to the ATF Violent Crime Task Force. In this capacity, I enforce federal criminal laws relating to the possession and trafficking of firearms. Prior to my employment with the ATF, I served as a Police Officer with the Washington D.C. Metropolitan Police Department in Washington DC from November 2008 until December 2010. I also served as a Federal Air Marshal from December 2010 until May 2017. I received formal training from the Federal Law Enforcement Training Center in Glynco, Georgia, Criminal Investigators Training Program, which familiarized me with basic narcotic investigations, drug identification and detection, familiarization with United States narcotics laws, financial investigations and money laundering, identification and seizure of drug-related assets, organized crime investigations, physical and electronic surveillance, and undercover operations. In addition, I successfully completed a 14- week ATF Special Agent Basic Training course in Glynco, Georgia, which included comprehensive, formalized instruction in, among other things: firearms



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

identification, firearms trafficking, arson and explosives, and tobacco and alcohol diversion.

3. Because of my personal participation in this investigation and because of information provided to me by other agents and officers, I am familiar with the facts and circumstances of this investigation. My familiarity with this investigation is further based on information relayed to me by other law enforcement personnel, discussions with other experienced officers, detectives, and agents, review of law enforcement reports, and interviews of witnesses. My experience in investigating firearms traffickers and drug offenders, my education, my conversations with senior agents, and my specialized training formed a basis of opinions and conclusions set forth below. Because this affidavit is being submitted for the limited purpose of obtaining search warrants for the Subject Residence and Subject Vehicle described below, I have not included every fact known to me concerning this investigation. Rather, I have set forth only the facts that I believe are necessary to establish probable cause and the factual foundation for the issuance of requested search warrants.

## II. PURPOSE OF AFFIDAVIT

4. This Affidavit is submitted in support of an application for search warrants authorizing the search of the following residence and vehicle:

a. **Subject Residence**: A multiple-story residence located at 22628 106th Avenue S.E., Kent, Washington, further described as blue in color that stands off a driveway. The residential building is clearly marked with dark numbering showing "22628." This SUBJECT RESIDENCE is occupied by JESUS RINCON-MEZA.

b. **Subject Vehicle:** A 2005 Jeep Grand Cherokee, gray in color, bearing Washington State License Plate AGU4801 and Vehicle Identification Number (VIN) 1J8HR58215C594933. According to Washington Department of Licensing (DOL) records, the Subject Vehicle is registered to Valente Silva Gomez at 11043 S.E. 253rd Place, Apartment W203, Kent, Washington. This SUBJECT VEHICLE is used by JESUS RINCON-MEZA.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

5. Based upon the facts set forth below, there is probable cause to believe that contained within the residence and vehicle described above and in Attachment A (attached hereto and incorporated by reference), there exists evidence, fruits, and instrumentalities, as described in Attachment B (attached hereto and incorporated by reference), of the following federal crimes, committed in the Western District of Washington:

a. Possession of Firearms by an Alien, in violation of 18 U.S.C. § 922(g)(5);

b. Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c);

c. Possession and Transfer of Unregistered Firearms, in violation of 26 U.S.C. 5861(d) and 5861(e), and,

d. Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1);

6. Based on my training and experience, and the facts described herein, I further believe that JESUS RINCON-MEZA has engaged in unlawful possession of firearms as an alien and the sale and distribution of controlled substances, namely methamphetamine, and that RINCON-MEZA utilizes the Subject Residence and/or Subject Vehicle to facilitate his firearms trafficking and drug distribution activities. As further explained below, I believe that a search at the Subject Residence and the Subject Vehicle will likely result in the discovery of evidence of these offenses.

## III. TARGET OF INVESTIGATION

7. According to information provided by the Department of Homeland Security and Washington State Department of Licensing records, JESUS RINCON-MEZA is a 37-year-old male, and a national and citizen of Mexico. RINCON-MEZA was contacted by Homeland Security Investigation (HSI) agents in Seattle, Washington, on April 11, 2013. During this contact, RINCON-MEZA admitted that he was a national



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and citizen of Mexico, and had entered the United States without authorization. RINCON-MEZA also advised that he was an 'inactive' member of the Playboy Surenos-13 street gang. RINCON-MEZA made no claim of U.S. citizenship, but claimed to have a pending application in Los Angeles, California, for a lawful permanent resident card. RINCON-MEZA was placed under arrest for his illegal status and placed in removal proceedings, which are pending. HSI has not located any application or record that RINCON-MEZA has applied for lawful status.

8. RINCON-MEZA's Washington State driver's license lists the address of the SUBJECT RESIDENCE at 22628 106th Avenue S.E., Kent, Washington. His driver's license status is suspended/revoked third degree. The presence of RINCON-MEZA at the SUBJECT RESIDENCE has been confirmed by law enforcement physical surveillance of RINCON-MEZA during January 2019 to the present. RINCON-MEZA is also regularly observed, during the same time period, to be using the SUBJECT VEHICLE.

9. Law enforcement criminal history records show that RINCON-MEZA uses the alias of Jesus Ignacon Rincon. He has one prior arrest and no convictions. The prior arrest occurred on July 12, 2007, for unlawful use of weapons, a violation of Seattle Municipal Code Section 12A.14.080, with no charges filed.

## IV. SUMMARY OF INVESTIGATION

10. Beginning on or about January 30, 2019, and continuing to the present, RINCON-MEZA is under investigation for firearms trafficking and drug distribution by ATF and the Seattle Police Department. As further explained below, on January 1, 2019, RINCON-MEZA sold a grenade to an undercover agent (UCA) for $700. On March 5, 2019, RINCON-MEZA sold three firearms to an UCA for $5000. On the same day, the undercover agent observed RINCON-MEZA prepare a one-pound package of a white substance, believed to be methamphetamine, for a drug sale to another person. During the investigation, the SUBJECT RESIDENCE and SUBJECT VEHICLE have been utilized by RINCON-MEZA to facilitate the firearms transactions.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## V. DETAILS OF INVESTIGATION

11. On January 30, 2019, ATF SA Eric Jackson, SA Ben Hunt and Seattle Police Department (SPD) Detective Kevin Williams met with an SPD confidential informant (referred to as CI1 throughout the remainder of this affidavit) regarding information pertaining to RINCON-MEZA. CI1 stated that he/she has known RINCON-MEZA for approximately one year, knows RINCON-MEZA as being a member of the Playboy Surenos (PBS) street gang, that RINCON-MEZA is a leader of the PBS in the greater Seattle area, and uses the street name of "Solo". CI1 provided the address for RINCON-MEZA to be 22628 106th Avenue S.E. in Kent, the same as the SUBJECT RESIDENCE, and the SUBJECT VEHICLE as the car used by RINCON-MEZA. Regarding RINCON-MEZA's criminal activities, CI1 explained the following.

12. RINCON-MEZA has told CI1 that he "ripped" someone off for approximately 20 firearms and approximately 20 grenades. I know that the phrase "ripped someone off" means to use force or threats to take possession of another person's belongings. RINCON-MEZA had been attempting to sell the grenades and told CI1 that he only had 15 grenades left. RINCON-MEZA was initially attempting to sell the grenades for $5,000 each, but later claimed that he would sell the grenades for $700 per grenade. RINCON-MEZA is known to sell firearms and stolen vehicles. He uses methamphetamine on a daily basis, and has a surveillance system installed at his residence.

13. CI1 is cooperating with law enforcement and indicated an intention that he/she will receive favorable treatment by SPD, specifically, non-referral of an unlawful possession/delivery of narcotics case for charging and prosecution. CI1 has one felony conviction in California for Insufficient Check Funds. During the course of this investigation, the information provided by CI1 about RINCON-MEZA and his activities have been independently verified by law enforcement and none of the information has proven to be false.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

14. On January 31, 2019, SA Jackson, SA Hunt, and Detective Williams met with CI1 and directed him/her to contact RINCON-MEZA to introduce the UCA as a person with whom he/she does business, and to attempt to set up a transaction for the purchase of three grenades. CI1 contacted RINCON-MEZA by cell phone and offered the introduction and potential transaction.

15. On February 1, 2019, law enforcement agents met with CI1 and I conducted a search of CI1 and CI1's vehicle, and did not locate any unauthorized items or contraband. CI1 was fitted with an audio recording device by SA Jackson. As arranged between CI1 and RINCON-MEZA, CI1 drove to the SUBJECT RESIDENCE and RINCON-MEZA came out of the SUBJECT RESIDENCE and entered CI1's vehicle. CI1 and RINCON-MEZA drove to a few locations prior to meeting SA Hunt, and physical surveillance was maintained on them. CI1 drove with RINCON-MEZA to a residence located at 12639 S.E. 168th Street in Kent, Washington, where RINCON-MEZA went inside and came back out with a grenade. They then traveled to the parking lot of Hawthorne Suites at 6329 South 212th Street, Kent, Washington, to meet with the UCA.

16. Upon arrival at the parking lot, the UCA entered CI1's vehicle. The UCA had a video and audio recording device. RINCON-MEZA handed a grenade to the UCA, and the UCA provided $700 in cash to RINCON-MEZA. During this transaction, RINCON-MEZA and the UCA spoke about future deals. After the UCA got out of the vehicle, CI1 returned RINCON-MEZA back the SUBJECT RESIDENCE. CI1 then met law enforcement agents at a designated location where CI1 and CI1's vehicle were searched, with no contraband or other unauthorized items located. The audio recording on CI1 as well as the video-audio recording on the UCA are being retained by ATF.

17. The grenade sold by RINCON-MEZA to the UCA was x-rayed by ATF Explosives Enforcement Officer (EEO) Brennan Phillips who determined it to be a live, illumination grenade, classified as an explosive under federal law. EEO Phillips determined the grenade was made at Crane Navel Depot in Indiana. ATF has no record



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

of registration of this hand grenade. Possession and transfer of a unregistered hand grenade is a violation of law under 26 U.S.C. 5861(d) and 5861(e).

18. Another confidential informant was introduced during this investigation, and will be referred to herein as CI2. The UCA and CI1 had represented to RINCON-MEZA that they reported to a 'boss' in Mexico and CI2 was directed by law enforcement to pose as the 'boss.' CI2 is a paid informant for ATF and other law enforcement agencies. CI2 provides information and receives money in exchange for the information he/she provides. CI2 has provided accurate information on cases related to illegal narcotics trafficking and illegal firearms trafficking to multiple agencies for more than 20 years.

19. At law enforcement direction, on February 9, 2019, CI2 placed a recorded call to RINCON-MEZA and they discussed the interest of CI2 and the UCA purchasing stolen trucks, firearms and possibly grenades from RINCON-MEZA in the future. CI2 also explained to RINCON-MEZA, he/she had someone they needed to "collect" from. Based on my training and experience, the term "collect" or "collection" is a term used refer to violently take back money or items that are owed. RINCON-MEZA told CI2 that he and his crew engage in 'collection' and CI2 agreed to meet face-to-face with RINCON-MEZA to talk further. The audio-recording was turned over to the ATF to be maintained as evidence.

20. During February 14 and 15, 2019, RINCON-MEZA and the UCA had several cell phone communications during which time the UCA agreed to meet on February 15, 2019, to purchase a stolen truck, grenades, and rifles. On that day, RINCON-MEZA arrived at a WinCo Foods parking lot in Kent, driving the SUBJECT VEHICLE. He and the UCA discussed a payment of $1,500 for stolen truck, and RINCON-MEZA drove to an apartment complex near South 258th Place and 27th Place South in Kent, with the UCA following. RINCON-MEZA pointed out a white GMC Sierra as the stolen vehicle that he would sell. RINCON-MEZA stated that he had provided narcotics to a car carrier in exchange for four GMC Sierras. He further stated



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

that the truck had to be hot-wired and he did not have a key. RINCON-MEZA attempted to have a tow truck driver transport the truck for the UCA, however, the tow truck driver refused to do so without registration records. The UCA and RINCON-MEZA agreed to meet again the next day. This meeting between the UCA and RINCON-MEZA was recorded by the UCA.

21. A meeting on February 16, 2019, did not occur. It was determined that the GMC Sierra was reported stolen from U-Haul in Renton, and the vehicle was subsequently released to U-Haul.

22. On March 4, 2019, arrangements were made for CI2 and the UCA to meet with RINCON-MEZA at the El Habanero restaurant located at 1819 West Meeker in Kent. RINCON-MEZA arrived in the SUBJECT VEHICLE and met CI2 and the UCA inside the restaurant. During the conversation between the three, RINCON-MEZA and CI2 spoke in Spanish at times. The UCA does not speak or understand Spanish, and participated in English with RINCON-MEZA and CI2. The conversation was recorded by CI2 and the UCA.

23. CI2 told RINCON-MEZA that the UCA worked for CI2 and was purchasing firearms and grenades on his/her behalf. CI2 claimed that he/she had a person (fictitious) who owed a debt of $200,000.00 to the people that CI2 worked for, and RINCON-MEZA advised that he and his crew does "collections." RINCON-MEZA stated that if they reached an agreement for him and his crew to do the 'collection" for CI2, the subject of the "collection" could be killed to prevent 'talk' by the subject. I know that the term 'talk' as referred by RINCON-MEZA in this context refers to talking to the police. The UCA asked RINCON-MEZA what they needed to do the "collection," and RINCON-MEZA explained that he needed a location and photograph of the subject. Specifically, RINCON-MEZA stated, "I'ma do it my way . . .first I'm gonna try, you know, the easy. If it doesn't go, if it doesn't work then I'm . . . I'm gonna have to take him with us. You know what I mean? . . . You know, if I have to get rid of the fucking guy then I'm gonna get rid of him and that's it. You know what I mean? Because I'm



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

not going to jail for nobody." RINCON-MEZA told CI2 that he was willing to do the 'collection' for half the debt.

24. RINCON-MEZA also told CI2 and the UCA that he "only got certain people that do shit like that . . . I've got my homies, but I've got my homeboys . . . I only have five of them that I trust, ... I got my tigers, I got my drug, like the ones that sell drugs." In these statements, I believe that RINCON-MEZA's crew consists of men who handle the 'collections' and other men who deal drugs for him. Regarding drugs, RINCON-MECA stated that he could distribute as much as 30 pounds of methamphetamine a week. CI2 and RINCON-MEZA agreed to revisit possible methamphetamine transactions later. When the conversation turned to grenades, RINCON-MEZA stated that he sold all of the ones that he had, and would have to obtain more, but he could get firearms. RINCON-MEZA also told CI2 and the UCA that he knew someone who could make the firearms fully automatic, and could get auto sears for the firearms. The auto sears would be sold for $500 each. RINCON-MEZA told them he could get auto sears for handguns. RINCON-MEZA told SA Hunt he would sell him autosears for $500 each. I know that a sear is the part of the trigger mechanism that holds the hammer, strike, or bolt back under the tension of the mainspring of the firearm. An auto sear is a trigger sear that allows for full-automatic fire, that is, to operate as a machine gun. At the conclusion of this meeting, RINCON-MEZA agreed to meet at another time with CI2 and the UCA.

25. On March 5, 2019, RINCON-MEZA contacted the UCA by cell phone, and stated that he had guns and would take $5000 for them. Later that day, under surveillance by law enforcement and with a recording device, the UCA traveled to the SUBJECT RESIDENCE. The SUBJECT VEHICLE was parked at the SUBJECT RESIDENCE. The UCA went into the residence and conversed for a few minutes with RINCON-MEZA while they waited for another person to bring two of the firearms. That person, identified as James Lopez, arrived at the SUBJECT RESIDENCE shortly after the UCA. RINCON-MEZA showed two firearms to the UCA: A Romarm/Cugir, Mini



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Draco, 7.72x39 caliber pistol and a Smith & Wesson, M&P 15, 5.57-caliber rifle. Lopez pulled out a Glock 17, 9mm pistol with full auto sear attached from his waistband and gave it to the UCA. Lopez explained that if the UCA got caught with the firearm, it would be a "fed" charge. I believe Lopez was referring to the auto sear on the Glock. The UCA provided RINCON-MEZA with $5,000 cash for the firearms. Lopez carried the three firearms from the SUBJECT RESIDENCE to the UCA's vehicle. The UCA then departed the SUBJECT RESIDENCE.

25. While the UCA and RINCON-MEZA were waiting for Lopez to arrive, RINCON-MEZA took the UCA into the living room where a .22 caliber rifle was propped up on the couch. RINCON-MEZA put a magazine into the rifle and loaded it. RINCON-MEZA claimed that the rifle was his gun that he used for squirrels. He then retrieved a tactical scope and gave it to the UCA. Next, RINCON-MEZA went into one of the bedrooms and came out with a gallon sized zip locked bag containing one-quarter filled with a crystalline substance. The UCA, based on his training and experience, recognized the crystalline substance to be similar in appearance to one pound of methamphetamine. RINCON-MEZA weighed out an ounce of the methamphetamine on a scale, next to a .22 caliber rifle. RINCON-MEZA packaged the methamphetamine in plastic wrapping and commented to the UCA that he had to "make some money real quick" and walked outside with the methamphetamine. Agents observed RINCON-MEZA come outside of the SUBJECT RESIDENCE conduct a drug transaction with an unknown individual.

25. SA Jackson conducted a search of the National Crime Information Center database and learned that the Glock 17 was reported stolen in Seattle on February 24, 2019.

26. On March 6, 2019, ATF SA Claudia Grigore, an interstate nexus expert, examined the three firearms and determined they were all manufactured outside of the State of Washington and that all three firearm met the definition of a firearm under federal law.



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

27. On March 8, 2019, RINCON-MEZA contacted the UCA by cell phone and advised that he had two Glock Auto Sears and two Mac-11 pistols to sell. The UCA went to the SUBJECT Residence and saw the same .22 caliber rifle on the couch. RINCON-MEZA stated that he did not have the auto sears and pistols, but may have AK-47s available later. On that evening, RINCON-MEZA contacted the UCA by phone offering two AK-47s rifles. The price offered was deemed too expensive so the UCA did not arrange the transaction.

## VI. AGENT'S RELEVANT EXPERIENCE

28. As a result of my training and experience, and through consultation with other experienced investigators, I know or have reason to believe the following:

a. That persons who possess firearms commonly store the firearms in their residence, and in their garage and/or outbuildings located on the property of their residence, and that it is reasonable for a law enforcement investigator to believe that persons who possess firearms also have other items related to firearms, such as gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, literature relating to firearms, photographs of firearms and receipts for the purchase of these items;

b. That persons store and maintain documents and records which indicate their occupancy and/or ownership of residences, such as personal mail, receipts, checkbooks, personal identification documents, notes and other correspondence, utility bills, financial documents, keys, photographs, leases, mortgage bills, vehicle registration information, ownership warranties, photographs of themselves occupying the property and vehicles, within their residences;

c. That firearms are not perishable nor readily destroyed, but are items of a continuing nature, have an enduring utility to persons who possess them, and their possession is typically constant and ongoing, often remaining in one person's possession for a period of time sufficient for the person to have access to use, and



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

therefore the unlawful possession of firearms is typically an ongoing offense and the prohibited person in possession of firearms will retain possession for many days, months, and even years, in their residence, on their person, in a vehicle, or other storage location;

d. That even when a person does dispose of a firearm, they often continue to retain evidence of their prior possession of the firearm, such as gun cases, ammunition, ammunition magazines, holsters, spare parts, cleaning equipment, literature relating to firearms, photographs of firearms and receipts for the purchase of these items, in their residence and vehicle.

29. Regarding drug trafficking, based on my training and experience, and based upon my consultation with other experienced law enforcement agents and officers, I know that:

a. Illicit drugs are frequently stored, weighed, and packaged using equipment such as scales, sifters, hammers, grinders, razor blades, glass panes, mirrors, kilo or pound presses, and the like for processing and preparing drugs for sale. It is also typical practice to repackage the drugs oftentimes in smaller quantities using masking agents, tape, heat-sealers, heat-sealed bags, Ziploc or similar plastic bags, paper or plastic bindles, gel capsules, and other containers for redistribution. It is further common for drug traffickers to maintain hidden compartments, items altered for the purpose of hiding or concealing drugs, and items purchased and converted for the use of storing their drugs. It is common for drug traffickers to maintain their equipment and supplies in their residences and/or vehicles where they are concealed from law enforcement officials and where they may be easily accessed and utilized.

b. It is common for drug traffickers to maintain books, receipts, purchase orders, notes, ledgers, notebooks and other forms of records specifically relating to their drug distribution activities in order to account for the transportation, ordering, purchase, manufacturing, and distribution of their illegal



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

drugs and the remittance of drug proceeds. Moreover, because drug traffickers will often 'front' (sell on consignment) controlled substances to their customers, or they will be 'fronted' (buy on credit) controlled substances from their suppliers, such documentation is necessary to keep track of the amounts paid and owed with respect to their customers and suppliers. These ledgers are more commonly known as "pay/owe" sheets and may be as simple as notations on miscellaneous pieces of paper or may be recorded more formally in notebooks, on electronic or digital notepads on cellular telephones and other digital devices, and on computer spreadsheets. Such records are also frequently encoded to protect those involved in distribution activities and are often maintained by drug traffickers on their persons, in their residences, and/or vehicles so the records are close at hand and readily available to be referenced.

c. Drug traffickers frequently maintain lists of names, aliases, telephone numbers, physical addresses, and email addresses, sometimes encoded and sometimes not encoded, for contacting their suppliers, customers, transporters, and others involved in their drug distribution activities. Those records are also typically maintained in residences, vehicles, and storage units where they can be readily available to reference in preparation for and during drug transactions. Moreover, such records are commonly stored electronically in cellular telephones, e-reader devices, laptops, computers, and other digital devices.

d. Drug traffickers also commonly store their illicit drug inventory and any drug use paraphernalia, to include pipes, syringes, and rolling papers, in their residences, vehicles, and/or storage units so that they may have ready access to these items while conducting drug activities, and also, to conceal these items from law enforcement officials.

e. It is common for drug traffickers to conceal large sums of currency, precious metals, jewelry, wire transfer receipts, cashier checks, money orders, and other financial instruments or items of value that either represent the proceeds



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

from drug sales or are intended for the purchase of controlled substances, including documentation relating to the purchase of real estate and motor vehicles.

f. During the course of a search, it is not uncommon to find articles of personal property that tend to identify the person(s) in the residence, occupancy, control, or ownership of the subject premises and/or vehicle, such as canceled mail, deeds, leases, titles, registration information, rental agreements, photographs, videos, diaries, utility and telephone bills, tax documentation, travel documents, statements, passports, driver's licenses, and/or identification cards, immigration documents, birth certificates, and keys.

30. Moreover, persons involved in firearms and drug trafficking frequently utilize cellular telephones, text-messaging devices, voicemail, telephone calling cards, computers, email and/or personal digital assistants such as Palm and Blackberry devices, in order to communicate with their suppliers, customers, transporters, and others involved in their firearms and drug trafficking activities. These items are often maintained on their persons or in their residences and vehicles where they are readily available. Further, firearms and drug traffickers often utilize two-way radios, police scanners, video surveillance systems, and other counter-surveillance equipment to prevent detection by law enforcement, and such items are typically located at their residences and/or vehicles.

31. This investigation has established that RINCON-MEZA utilizes a cellular telephone to communicate regarding firearms trafficking. Further, CI1 told agents that RINCON-MEZA has a surveillance camera system in his home. Such systems are commonly used by persons involved in firearms and drug trafficking to protect their firearms and narcotics, to detect and prevent burglaries of their contraband items, as well as to be informed and alerted about law enforcement activity.

32. Regarding cellular phones and other digital and electronic devices, these items often contain evidence of firearms and drug trafficking, including:

a. Assigned telephone number and identifying serial number (e.g. ESN, MIN, IMSI, IMEI);



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

b. Stored list of recent received, sent, or missed calls;

c. Stored contact information;

d. Stored photographs of firearms, firearm parts, weapons, narcotics, currency, suspected criminal activity, and/or the use of the phone or coconspirators, including any embedded GPS data associated with those photographs; and,

e. Stored text messages.

33. Furthermore, I know that it is common for firearms and drug traffickers to secrete firearms and other weapons, drugs, currency, and other valuable items representing criminal proceeds within their residence and vehicle to prevent theft of such items by other persons or the seizure by law enforcement. These secure locations typically include safes, portable safes, vaults, and other locked containers (sometimes requiring passwords or codes to open), as well as specially constructed concealed compartments such as those often found in 'load cars' used to specifically facilitate the transportation of controlled substances.

## VI. CONCLUSION

34. Based on the facts set forth in this affidavit, I submit that there is probable cause to believe that JESUS RINCON-MEZA is involved in unlawful firearms and drug trafficking activities, and that evidence, fruits, and instrumentalities of the crimes of Possession of Firearms by an Alien, in violation of 18 U.S.C. § 922(g)(5); Possession of a Firearm During a Drug Trafficking Crime, in violation of 18 U.S.C. § 924(c); Possession and Transfer of Unregistered Firearms, in violation of 26 U.S.C. 5861(d) and 5861(e),



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

and Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1), as described in Attachment B will likely be found at the Subject Residence and the Subject Vehicle.

ELLIOTT J. PROSE, U.S. Department of Justice
Bureau of Alcohol, Tobacco, Firearms, and Explosives

The above-named agent provided a sworn statement attesting to the truth of the contents of the foregoing affidavit on the 19 day of March, 2019.

Mary Alice Theiler
United States Magistrate Judge



UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970